[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
DECEMBER 9, 2011
JOHN LEY
CLERK

No. 11-12451
Non-Argument Calendar
_____

D.C. Docket No. 4:09-cr-00034-RLV-WEJ-1


UNITED STATES OF AMERICA,

                                                          Plaintiff - Appellee,

versus

DWIGHT HERSCHEL GREEN,

                                                          Defendant - Appellant.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(December 9, 2011)

Before WILSON, PRYOR, and KRAVITCH, Circuit Judges.

PER CURIAM:

Dwight Herschel Green appeals his convictions for interstate travel and attempted possession of a destructive device in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(g) (Count One), and possession of a firearm by a convicted felon, in violation of 18 U.S.C. §§ 922(g)(1), 924(a)(2) (Count Two). He also appeals his 108-month sentence on the grounds that the district court erroneously applied a four-level sentencing enhancement pursuant to U.S.S.G. § 2K2.1(b)(6) for possession of a firearm in connection with another felony offense. After thorough review of the briefs and record, we affirm.

I.

On February 22, 2011, the government filed a third superseding indictment charging Green with Count One and Count Two. Green pled not guilty to both counts and was tried by a jury. At trial, the government presented evidence consisting of the testimony of numerous law enforcement agents; the testimony of a cooperating witness, Brian Moses; and video and audio tapes of meetings that Moses had with Green. At the conclusion of the government's case, Green moved for judgment of acquittal on Count One, arguing that he had not attempted to purchase grenades with the intent to commit a crime of violence. The district court denied this motion.

The defense then presented its case. After offering the testimony of three

witnesses, Green took the stand.  At the close of all the evidence, Green did not move for judgment of acquittal.  After hearing closing arguments, the jury found Green guilty on both counts.

At sentencing, Green received a four-level enhancement for possessing a firearm in connection with another felony offense pursuant to U.S.S.G. § 2K2.1(b)(6).  The felony offense alleged was possession of methamphetamine, which officers testified they had found during a search of his home.  This enhancement resulted in a total offense level of 26, and Green's guideline range was calculated to be 63 to 78 months.  The district court sentenced Green to 72 months of imprisonment for each of  Count One and Count Two, with 36 of the months of the Count Two sentence to run concurrently with Count One and the remaining 36 months running consecutive to Count One.  The result was a 108-month total sentence.  Green now appeals his convictions and the four-level enhancement under § 2K2.1(b)(6).

## II.

We typically review *de novo* whether sufficient evidence supported the jury's guilty verdict.  *See United States v. Klopf*, 423 F.3d 1228, 1236 (11th Cir. 2005).  However, if a defendant fails to renew a motion for judgment of acquittal at the close of all the evidence, then we will reverse a conviction only to prevent a

"manifest miscarriage of justice." *United States v. Edwards*, 526 F.3d 747, 755–56 (11th Cir. 2008). This standard is met when "the evidence on a key element of the offense is so tenuous that a conviction would be shocking." *United States v. Bichsel*, 156 F.3d 1148, 1150 (11th Cir. 1998) (per curiam) (quotation omitted).

A.

To establish a violation of 18 U.S.C. § 924(g), the government must prove that the defendant, with intent to engage in conduct that constitutes a crime of violence, traveled from one state into another and acquired, transferred, or attempted to acquire or transfer a firearm[1] in furtherance of the crime of violence. 18 U.S.C. § 924(g).

Green contends that the evidence does not establish that he intended to engage in a crime of violence. At trial, the government offered the testimony of Brian Moses, who met with Green on multiple occasions to discuss a murder-for-hire scheme. Two of these meetings were recorded, and the government played the audio for the jury during Moses's testimony. Moses explained that in April 2009, he and Green discussed the scheme and identified seven potential victims. Moses further testified that he and Green had discussed obtaining grenades for

---

[1]The definition of firearm includes a grenade. 18 U.S.C. § 821(a)(3)(D), (a)(4)(A)(ii).

Green to throw through the window of a home in order to kill five people. Moses also testified that Green exchanged $200 for the grenades, and the government produced pictures from an ATM camera to corroborate the withdrawal of this money. Moses and Green arranged for delivery of the grenades at a location in Alabama, and Green left his home and drove toward the arranged meeting spot upon receiving a call from Moses on April 16, 2009.

Green testified in his own defense at trial and admitted that his voice was on the recordings. He testified that he was intoxicated during the conversations and never intended to obtain the grenades in order to kill the alleged targets of the scheme. Green could not, however, identify any point in the recorded conversation between himself and Moses where he said he did not want the grenades.

The jury was entitled to credit Moses's testimony and base its verdict on his recollections. *See Craig v. Singletary*, 127 F.3d 1030, 1044–45 (11th Cir. 1997) (en banc) ("[U]ncorroborated testimony of a co-conspirator or accomplice is sufficient to prove guilt beyond a reasonable doubt."). We find no "manifest miscarriage of justice" is present here because the record evidence plainly supports the jury's verdict on Count One. *Edwards*, 526 F.3d at 755–56.

B.

5

Green next argues that he was not in possession of any firearms and therefore could not have been found guilty on Count Two. "To establish a violation of 18 U.S.C. § 922(g)(1), the government must prove three elements: (1) that the defendant was a convicted felon, (2) that the defendant was in knowing possession of a firearm, and (3) that the firearm was in or affecting interstate commerce." *United States v. Beckles*, 565 F.3d 832, 841 (11th Cir. 2009) (quotation omitted). The element of knowing possession can be established if the government shows constructive possession through either direct or circumstantial evidence. *Id.* "Constructive possession exists when the defendant exercises ownership, dominion, or control over the item or has the power and intent to exercise dominion or control." *Id.* (quotation omitted).

Count Two was based on the three firearms that police found in Green's home after he was arrested. At trial, Moses testified that he saw firearms in Green's house during one of their April, 2009 visits. He provided law enforcement with a sketch of the home and indicated the location of the weapons, and at trial Agent Meadows, who participated in the search of Green's house, testified that the weapons were found almost exactly where Moses had indicated. Agent Meadows further explained that his search of the house indicated that Green was the only person living there at the time.

6

Green contends that the element of knowing possession is not satisfied. He testified at trial that the weapons did not belong to him. He argues on appeal that his brothers-in-law had ample time to plant the weapons in his home prior to its being searched by police. Furthermore, he points out that he did not possess any weapons on his person at the time of his arrest.

The jury was entitled to disbelieve Green's explanations at trial that the weapons did not belong to him. *See United States v. Thompson*, 473 F.3d 1137, 1143 (11th Cir. 2006). The record contains sufficient evidence of Green's knowing possession of a firearm, and upholding the jury verdict on this count does not result in a "manifest miscarriage of justice." *Edwards*, 526 F.3d at 755–56.

III.

Next, Green challenges the calculation of his total offense level of 26 at sentencing. When calculating the guideline range for a firearm possession offense under 18 U.S.C. § 922(g), a four-level enhancement to the base offense level is required "[i]f the defendant used or possessed any firearm or ammunition in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6). We give the phrase "in connection with" its ordinary meaning and interpret it expansively. *See United States v. Rhind*, 289 F.3d 690, 695 (11th Cir. 2002).

We have held that "in certain circumstances, mere possession of a firearm

7

can be enough to apply a sentencing enhancement." *United States v. Jackson*, 276 F.3d 1231, 1234 (11th Cir. 2001). This enhancement can be appropriate even where there is no proof that the firearm actually facilitated the felony offense. *See Rhind*, 289 F.3d at 695–96 (holding that the firearms were connected with defendants' counterfeiting offenses where it was reasonable to conclude that the presence of a firearm protected the counterfeit money); U.S.S.G. § 2K2.1 cmt. 14(A); *see also United States v. Wooten*, 253 F. App'x 854, 858 (11th Cir. 2007) (per curiam).

We review a district court's application and interpretation of the guidelines *de novo* and its factual findings for clear error. *Rhind*, 289 F.3d at 693. The district court's determination that the defendant used a firearm in connection with another felony offense is a factual finding that we review for clear error. *See United States v. Whitfield*, 50 F.3d 947, 949 (11th Cir. 1995) (per curiam).

Green avers that no evidence established that the firearms found in his home were connected to another felony. He explains that he was not charged in federal court with possession of methamphetamine—the underlying felony for the sentencing enhancement—and that there is no evidence that he distributed any controlled substance. He further argues that the purported methamphetamine found in his home was never tested in a laboratory and therefore its possession

cannot serve as the underlying felony.

We conclude that the district court did not clearly err in determining that Green possessed a firearm in connection with his possession of methamphetamine. Contrary to Green's argument, this four-level enhancement may be appropriate even if the defendant is not charged with or convicted of the underlying felony offense. *See* U.S.S.G. § 2K2.1 cmt. 14(C). Numerous witnesses testified at trial to seeing methamphetamine in Green's house. Moses testified that he saw the substance during a meeting with Green at Green's home. At trial, two agents testified to finding methamphetamine during the search of Green's home, and Agent Meadows specifically elaborated that he found methamphetamine in a sandwich bag at the bottom of a glass. This testimony is sufficient to establish by a preponderance of the evidence that Green in fact possessed methamphetamine. *See United States v. Smith*, 480 F.3d 1277, 1280–81 (11th Cir. 2007) (upholding the district court's sentencing enhancement where allegations that the defendant possessed cocaine were based on an officer's testimony that he saw the defendant hide a bag containing a white powdery substance in his sock, even though cocaine was never recovered).

Moreover, it was reasonable for the district court to conclude that the firearms found in Green's home had the potential to facilitate the felony offense of

9

possession of methamphetamine.  A reasonable factfinder could infer that the firearms were intended to protect Green while he possessed methamphetamine and to prevent the methamphetamine from being stolen.  *See Rhind*, 289 F.3d at 695–96.  As a result, the district court did not err in applying the four-level enhancement for possessing a firearm in connection with a felony offense.

**AFFIRMED.**