[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 09-13663
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JANUARY 27, 2010
JOHN LEY
ACTING CLERK

D. C. Docket No. 08-00208-CR-4

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

RONALD RENARDO SMITH,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(January 27, 2010)

Before TJOFLAT, WILSON and KRAVITCH, Circuit Judges.

PER CURIAM:

Ronald Renardo Smith appeals his 110-month sentence for possession of a

firearm and ammunition by a felon. After a thorough review, we affirm.

I.

On December 19, 2007, Savannah-Chatham Metro Police conducted a traffic stop for tinted windows and a shattered rear taillight. As a police officer approached the driver to write the ticket, the officer observed Smith, the front-seat passenger, acting nervously. The officer removed Smith from the car and conducted a pat-down search, during which the officer found what he believed to be crack cocaine in Smith's pocket. After obtaining the driver's consent, the officer searched the car and found a firearm underneath Smith's seat and additional firearms at the feet of the two rear-seat passengers. In the center console, the officer found Ecstacy and another substance he believed to be crack cocaine.[1] Smith subsequently pleaded guilty in state court to possession of cocaine.

Smith was indicted in federal court for possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g), and possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k). He pleaded guilty to the § 922(g) offense.

In calculating the sentencing guidelines range, the probation officer determined the base offense level to be 20 under U.S.S.G. § 2K2.1 because Smith

_____

[1] The GBI lab tested both samples of suspected crack cocaine taken from Smith's pocket and the center console and determined only one of them was crack. The lab did not identify which of the two samples tested positive.

had a prior controlled substance conviction, namely cocaine possession in state court. The probation officer then included a four-level enhancement under U.S.S.G. § 2K2.1(b)(6) for possession of a firearm in connection with another felony offense, which was, again, the possession of cocaine. The guidelines calculations yielded a guidelines range of 110 to 120 months' imprisonment.

Relevant to this appeal, Smith raised two objections to the sentencing calculations. First, he objected to the enhancement for possession of a firearm in connection with another felony because cocaine possession was not a drug-trafficking offense and there was no evidence the firearm facilitated his possession. Second, he argued that the government failed to prove that the substance taken from his pocket was cocaine and thus should not have been considered in determining his base offense level. The district court overruled the objections, finding that the firearm had the potential to facilitate the drug possession, and Smith had pleaded guilty to possession of cocaine in state court. Smith was sentenced to 110 months' imprisonment. This appeal followed.

II.

Smith raises two issues on appeal. First, he argues that the district court committed *Booker*[2] error by determining his base offense level on the basis of facts

---

[2] *United States v. Booker*, 543 U.S. 220 (2005).

3

neither found by a jury beyond a reasonable doubt nor admitted by him. Second, he argues that the district court incorrectly applied the § 2K2.1(b)(6) enhancement because it did not find that the firearm actually facilitated the other felony offense. We address each issue in turn.

In cases where *Booker* error is preserved, we review the constitutional challenge to the sentence *de novo*. *United States v. Chau*, 426 F.3d 1318, 1321 (11th Cir. 2005).

In this case, we conclude that the district court committed no *Booker* error. Smith admitted to possessing cocaine by pleading guilty to the state possession charges. This was sufficient for the court to conclude that the enhanced base offense level was appropriate. As long as the district court views the guidelines as advisory, "nothing in [*Booker*] prohibits the district court from imposing guideline enhancements based on facts found by the judge by a preponderance of the evidence." *United States v. Douglas*, 489 F.3d 1117, 1129 (11th Cir. 2007); *see also Chau*, 426 F.3d at 1324 (explaining that the district court may find facts neither found by a jury nor admitted by the defendant and use them in formulating a sentence, as long as it properly applies the advisory guidelines).

Smith next argues that the district court erroneously enhanced his sentence under U.S.S.G. § 2K2.1(b)(6) because there was no evidence that the firearm was

used in connection with the felony drug possession. Specifically, he argues that something more than "mere spatial proximity" is needed to satisfy the requirement that the firearm be used "in connection with" the underlying felony when a drug possession offense rather than a drug trafficking offense is involved.

We review a district court's application and interpretation of the Guidelines *de novo*, and its factual findings for clear error. *United States v. Rhind*, 289 F.3d 690, 693 (11th Cir. 2002). The district court's determination that the defendant used a firearm "in connection with" another felony offense is a factual finding reviewed for clear error. *United States v. Whitfield*, 50 F.3d 947, 949 n.8 (11th Cir. 1995). "For a factual finding to be clearly erroneous, this court, after reviewing all of the evidence, must be left with a definite and firm conviction that a mistake has been committed." *United States v. Rodriguez-Lopez*, 363 F.3d 1134, 1137 (11th Cir. 2004) (internal quotations omitted).

Under the guidelines, the court can apply a four-level increase if a felon possesses a firearm "in connection with another felony offense." U.S.S.G. § 2K2.1(b)(6). Smith's state-court conviction for possession of a controlled substance qualifies as "another felony offense." *See* U.S.S.G. § 2K2.1, comment. (n.14(C)).

The term "in connection with" means the firearm "facilitated, or had the

potential of facilitating, another felony offense." U.S.S.G. § 2K2.1, comment. (n.14(A)). We give the phrase "in connection with" its ordinary meaning and give it an expansive interpretation. *Rhind*, 289 F.3d at 695. In certain circumstances, mere possession of a firearm can be enough to apply a sentencing enhancement utilizing the "in connection with" language. *United States v. Smith*, 480 F.3d 1277, 1280 (11th Cir. 2007); *United States v. Jackson*, 276 F.3d 1231, 1234 (11th Cir. 2001). Thus, according to its ordinary and natural meaning, the phrase "in connection with" does not require proof that the firearm actually facilitated the other felony offense. *Rhind*, 289 F.3d at 695.[3]

Here, we conclude that the district court did not commit error when it applied the § 2K1.1(b)(6) enhancement. The guidelines require that the firearm possession facilitate "another felony offense." Nothing in the guideline dictates that the other felony be a drug-trafficking offense. As is the case here, the other felony was the mere possession of cocaine, to which Smith pleaded guilty in state court. Because firearms are often tools of the drug trade, we agree with the district court that Smith's possession of the firearm had the potential to facilitate the

---

[3] Although *Rhind* and *Jackson* were decided before the Sentencing Commission defined "in connection with," both cases are consistent with that definition. *See* U.S.S.G. § 2K2.1(b)(6), comment. (n.14(A)) (noting the applicability of the section where the firearm "had the *potential* of facilitating" another offense punishable by imprisonment for a term of over one year (emphasis added)).

6

underlying drug possession.  *Smith*, 480 F.3d at 1280.  Accordingly, we **AFFIRM.**